[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The marriage of the parties was dissolved on July 7, 1988, and the judgment has been the subject of numerous post-judgment motions. The parties have each moved the court to modify the support obligation of the defendant. Both of the parties appeared and argued their respective post-judgment motions pro se. At the time of the hearing concerning the motions, the parties each filed financial affidavits and prepared support guideline worksheets.
Having heard the argument of the parties and taking into CT Page 5433-BB consideration Sec. 46b-84, C.G.S. and the current Child Support Guidelines, the court makes the following findings and conclusions.
The last modification of support was ordered by this court on August 19, 1993 (Bassick, J.). At that time, the defendant was ordered to pay to the plaintiff child support in the amount of $90.00 per week for each of three children, for a total effective order of $270.00 per week. At that time, the court found an arrearage of $1550.00, and ordered the defendant to pay an additional $50.00 per week on that arrearage until it was paid.
At the present time, the parties have two children who are the subject of support obligations, Christopher, who turned 15 on June 6, 1996, and Nicholas who is 12. An older son, Jaime, turned 18 on January 18, 1996, and, although at the time the motions were heard he was a high school student at Maloney High School, Sec. 46b-84 (b) C.G.S. (which would obligate his parents to continue to support him until he graduates or turns 19) does not apply because the dissolution of this marriage occurred prior to July 1, 1994.
When the instant motions were heard by this court in April 1996, the defendant offered considerable evidence and testimony regarding what he claims to be "extraordinary expenses" incurred by him to continue his employment to substantiate his claim for deviation from support guidelines. He currently is a sales representative for an office copier supply company and has been so employed since before the date of the dissolution.
Through his exhibits and testimony, he has sought to establish that while his W-2 income for 1995 is apparently high ($101,016.78 as per Deft. Ex. 18), he has been required to expend considerable unreimbursed sums of his own money to generate that income.
On August 29, 1996, in contemplation of the rendition of this memorandum, the court directed the defendant to provide to the court his most current financial affidavit in order to permit the court to take into consideration any realization by the defendant of the dire projections as to his income made at the time the motions were heard.
The defendant refused to appear before the court to present his current financial affidavit. The court, therefore, has only CT Page 5433-CC the financial affidavits from the date of the hearing for its use in ruling on these motions.
The defendant's financial affidavit (dated 4/12/96) reflects the defendant's gross weekly income to be $686.86. The defendant claimed $264.04 as "expenses" which he claimed to be proper deductions from his gross income. The court disagrees with his interpretation of allowable deductions from gross income and refuses to allow such deduction. As noted in the guidelines, in some cases a parent may incur extraordinary expenses which arenot considered allowable deductions from gross income, but which are necessary for the parent to continue employment. Included among such expenses are "job-related unreimbursable employment expenses of individuals who are not self employed." Sec.46b-215a-3, Child Support Guidelines Regulations (CSGR).
The court finds that the "extraordinary expenses's incurred by this defendant may be used to deviate from the guideline amount owed by the defendant, those expenses cannot be considered as deductions from gross weekly income. When that figure of $264.04 is added back, his total net weekly income, according to the financial affidavit submitted by the defendant, is $422.82. That figure is rather incredulous considering the defendant's 1995 W-2 from his employer indicating "total wages, tips and other compensation's in the amount of $101,016.78 (Defendant'sEx. 18). The defendant's claimed income, as reported on his April 12, 1996 financial affidavit, is also inconsistent with the defendant's March 29, 1996 earnings statement (Defendant's Ex.19) which indicates his "regular earnings — gross pay" to be $1,750 for the week ending 3/29/96. That exhibit also shows the defendant's year-to-date regular earnings to be $16,924.35 as of 3/29/96.
The defendant also argues that some of that income is illusory because he will be obligated to forfeit certain bonuses and commissions which he has already received if any vendor through whom a commission was generated should forfeit on its purchase agreement before making a crucial twelfth payment to the defendant's company. Those projections have not been verified by the defendant as of the date of this memorandum.
Finally, he argues that his income for the previous 13 weeks is not truly reflective of his current salary picture, and he offered correspondence from his employer which advises him that effective March 26, 1996, his biweekly salary will be reduced for CT Page 5433-DD the next six months from $1600.00 to $1000.00. (Deft. Ex.5). The defendant offered no evidence or testimony to corroborate or authenticate that exhibit. Again, the defendant did not offer a current financial affidavit or earnings statement reflecting the projected reduction in his weekly salary.
The defendant also offered considerable evidence and testimony to show that his commission expectations have also nose-dived because most lucrative geographic markets (the "gold coast accounts" of Fairfield County) which used to be his exclusive sales territory have been lost to other salespersons and/or to competitor companies.
The court is not surprised to hear the somewhat bleak projection the defendant has provided regarding the copier business. The current business economy almost permits the court to take judicial notice of market sales trends. However, the court can only base the financial obligations of the parties on the finances as they exist at the time such motions are heard.
As noted herein, the defendant has failed to provide the court with a post-hearing financial affidavit. Based on the evidence elicited at the time of the hearing, the court finds that the defendant's gross weekly income is approximately $1942.63, based upon his gross earnings in 1995 ($101,016.78).
Even allowing the defendant all of the allowable deductions he has claimed on a weekly basis, his net weekly income is found to be $1814.14. When added to the plaintiff wife's net weekly income, which is found to be $609.94, the combined net weekly income of the parties is found to be $2424.08, an amount in excess of the maximum guideline amount of $1750.00.
When the parents' combined net weekly income exceeds $1750.00, awards shall be determined on a case by case basis and the amount prescribed at the $1750 level shall be the minimum presumptive level. Sec. 46b-215a-2 (a) Child Support Guideline Regulations.
At $1750.00, the support obligation for two children is $480.00.
Based upon the forgoing facts as found, the court enters the following orders.
The defendant's motion for reduction of his child support CT Page 5433-EE obligation is denied.
The plaintiff's motion for increase of the defendant's child support obligation is granted as follows.
The plaintiff's fractional share of the total support obligation ($480.00) is found to be 25% or $120.00. The defendant's fractional share of the total support obligation is found to 75%, or $360.00.
Having heard the evidence and testimony offered by the defendant regarding his job-related unreimbursable employment expenses, the diminution of his former sales territory and the exposure for loss of commissions, the court finds that there is sufficient basis to deviate from the support guidelines in this case.
The defendant's obligation for support is accordingly reduced from $360.00 to $260.00, payable as follows: $130.00 per week for each of the two minor children.
Both the plaintiff and the defendant may seek further modification of this order upon a showing that the financial information used by the court as the basis for the above orders was incorrect at the time of the entry of the orders.
As previously noted, the court cannot speculate as to the assets or income of either party and can deviate from the guidelines only upon a finding of facts.
The foregoing financial orders have entered and shall remain in effect until further order, of the court.
JOSEPH W. DOHERTY, J.